# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAMMY HORVATH,** | ) | **Case No. 3:18-cv-84** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GLOBE LIFE AND ACCIDENT** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Before the Court is Defendant Globe Life and Accident Insurance Company's ("Defendant") Motion for Partial Summary Judgment (ECF No. 20). The Motion is fully briefed (ECF Nos. 21, 22, 23, 24, 25, 26, 35, 36, 40, 41) and is ripe for disposition. For the reasons that follow, Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART**.

### II.   Subject-Matter Jurisdiction & Venue

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff Tammy Horvath ("Plaintiff") is a citizen of a different state than Defendant and the amount in controversy exceeds $75,000. (ECF No. 1 ¶¶ 1-3.)

Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b)(2), as a substantial portion of the events and omissions giving rise to Plaintiff's claims occurred in this District.

### III. Background

#### A. Factual History[1]

##### 1. The Applications and Policies

On January 26, 2016, Plaintiff applied for a life-insurance policy for her son, Luke Yuzwa, in the amount of $30,000. (ECF No. 22 ¶ 1; ECF No. 23 ¶ 1.) The application asked the following question about Mr. Yuzwa's health ("Question 4(a)"):

(a) Within the past 3 years, have any of the Proposed Insured(s) had any chronic illness or condition which requires periodic medical care?

(ECF No. 22 ¶ 2; ECF No. 23 ¶ 2; ECF No. 23-2 ¶ 1; ECF No. 25 ¶ 1.)[2] The application did not define the terms "chronic illness" or "condition," nor did it provide a list of medical conditions which would qualify as either a "chronic illness" or "condition." (ECF No. 23-2 ¶¶ 2, 4; ECF No. 25 ¶¶ 2, 4.) The application also did not define "periodic medical care" or otherwise indicate what length or frequency of visits qualifies as "periodic medical care." (ECF No. 23-2 ¶¶ 3, 5; ECF No. 25 ¶¶ 3, 5.) The application failed to ask any specific questions regarding the use of alcohol, marijuana, or other drugs, or about dependency on or addiction to alcohol or drugs. (ECF No. 23-2 ¶¶ 35-36; ECF No. 25 ¶¶ 35-36.)

Plaintiff answered Question 4(a) in the negative. (ECF No. 22 ¶ 3; ECF No. 23 ¶ 3.) Defendant approved the application and issued Policy 008F85062. (ECF No. 22 ¶ 4; ECF No. 23

---

[1] The Court derives these facts from a combination of ECF Nos. 22, 23, 25, 35, and 40. These facts are undisputed unless otherwise noted. The Court includes additional facts in Section V, *infra*, as necessary.

[2] Plaintiff's counter-statement of material facts, which is contained within the same document as its responsive concise statement of material facts, uses the same paragraph numbers as its responsive concise statement. (*See* ECF No. 23.) Therefore, the Court cannot cite to, *e.g.*, "¶ 1," because there are two such paragraphs within the same document. To refer to the responsive concise statement, the Court will cite to ECF No. 23. To refer to the counter-statement, the Court will cite to ECF No. 23-2.

¶ 4.)

On February 22, 2016, Plaintiff applied for a second life-insurance policy for Mr. Yuzwa in the amount of $25,000. (ECF No. 22 ¶ 7; ECF No. 23 ¶ 7.) The application again asked Question 4(a) about Mr. Yuzwa's health. (ECF No. 22 ¶ 8; ECF No. 23 ¶ 8; ECF No. 23-2 ¶ 1; ECF No. 25 ¶ 1.) The application did not define the terms used in Question 4(a). (ECF No. 23-2 ¶¶ 2-3, 6-7; ECF No. 25 ¶¶ 2-3, 6-7.)

Plaintiff answered Question 4(a) in the negative. (ECF No. 22 ¶ 9; ECF No. 23 ¶ 9.) Defendant approved the application and issued Policy 008G98329. (ECF No. 22 ¶ 11; ECF No. 23 ¶ 11.)

On April 12, 2016, Plaintiff completed online applications seeking to increase coverage on Policy 008F85062 and Policy 008G8329 (the "Policies") by $5,000 each, and, in doing so, certified that Mr. Yuzwa was in good health. (ECF No. 22 ¶¶ 5, 13; ECF No. 23 ¶¶ 5, 13.) Defendant approved the applications and issued a $5,000 Term Life Insurance Rider on each of the Policies. (ECF No. 22 ¶¶ 6, 14; ECF No. 23 ¶¶ 6, 14.)

On July 7, 2016, Plaintiff signed an application seeking to increase coverage on Policy 008G98329 by $5,000, and, in doing so, certified that Mr. Yuzwa was in good health. (ECF No. 22 ¶ 15; ECF No. 23 ¶ 15.) Defendant approved the application, and, on July 23, 2016, Defendant issued a $5,000 Term Life Insurance Rider on Policy 008G98329. (ECF No. 22 ¶ 16; ECF No. 23 ¶ 16.)

On August 2, 2017, Mr. Yuzwa died due to a gunshot wound to the head. (ECF No. 22 ¶ 17; ECF No. 23 ¶ 17.) On August 14, 2017, Defendant received a Proof of Death – Claimant's Statement from Plaintiff. (ECF No. 22 ¶ 18; ECF No. 23 ¶ 18.)

3

The Policies both contained incontestability provisions providing that: "We cannot contest this policy after it has been in force during the Insured's lifetime for 2 years from the Policy Effective Date." (ECF No. 22 ¶ 19; ECF No. 23 ¶ 19.) Mr. Yuzwa died within the contestability period set forth in the Policies, and Defendant was allowed to contest the Policies. (ECF No. 22 ¶ 20; ECF No. 23 ¶ 20.)

## 2. Defendant's Investigation

Defendant initiated an investigation, and, on August 7, 2017, Defendant sent a letter to Plaintiff requesting various documents, including an AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPPA. (ECF No. 22 ¶ 21; ECF No. 23 ¶ 21.) On August 25, 2017, Defendant sent a letter to Plaintiff notifying her that "IT WILL BE NECESSARY FOR US TO REQUEST SOME INFORMATION FROM MEDICAL PROVIDERS THAT PROVIDED TREATMENT TO THE INSURED OVER THE PAST FEW YEARS." (ECF No. 22 ¶ 22; ECF No. 23 ¶ 22.) On September 14, 2017, Defendant again wrote to Plaintiff to notify her that "ALL OR PART OF THE REQUESTED INFORMATION HAS NOT BEEN RECEIVED." (ECF No. 22 ¶ 23; ECF No. 23 ¶ 23.)

### a. Records from Laurel Pediatric Associates

As part of its investigation, Defendant obtained Mr. Yuzwa's medical records from Laurel Pediatric Associates. (ECF No. 22 ¶ 24; ECF No. 23 ¶ 24.) The records detail Mr. Yuzwa's medical treatment from April 8, 2013, through April 7, 2015, in part as follows:

a. **April 8, 2013** Chief Complaint—Possible Influenza. Assessment—cough, nausea alone, viral illness and contact or exposure to other viral disease. No medication prescribed.
b. **April 17, 2013** Chief Complaint—Possible Allergies. Assessment—allergic rhinitis cause uns, abdominal pain other site, headache. Prescribed cetirizine.

4

c. **May 23, 2014** Chief Complaint—Stomach ache x 2 days. Assessment—gastro[]enteritis,[3] abdominal pain epigastric, nausea with vomiting. Advised to take OTC Pepto Bism[o]l and OTC Probiotics. No medication, diagnostic testing, or follow-up treatment prescribed.

d. **November 22, 2014** Chief Complaint—Stomach cramps x "years." Assessment—abdominal tenderness LLQ, Irritable Bowl Syndrome.[4] "[D]iscussed that diet is likely causing a great deal of his pain and discomfort." "Foods containing glut[]en (wheat products) and dairy products can cause stomach issues." No medication, diagnostic testing, or follow-up treatment prescribed.

e. **January 28, 2015** Chief Complaint—Fever and achiness since last night. Assessment—viral illness, nasal congestion, myalgia.

f. **February 17, 2015** Chief Complaint—Feeling achy today. Assessment—abdominal pain generalized, nausea alone, cough, headache. Advised he could take Tums or Aspirin-free Alka Seltzer and Tylenol if needed.

g. **March 31, 2015** Chief Complaint—School excuse needed. Was vomiting this morning, but is now resolved. Assessment—acute gastroenteritis, vomiting alone. No medication, diagnostic testing, or follow-up treatment prescribed.

h. **April 7, 2015** Chief Complaint—"My joints." Assessment—pain in joints other sites. "Recommended to take OTC anti-inflammatory medicines for pain. May take up to 600 mg of ibuprofen." No medication, diagnostic testing, or follow-up treatment prescribed.

(ECF No. 23-2 ¶ 14 (citations omitted); ECF No. 25 ¶ 14.)

The records obtained from Laurel Pediatric Associates further indicate that, on April 17, 2013, Mr. Yuzwa was diagnosed with abdominal pain and admitted to "on/off lower-middle abdominal pain x 1 year." (ECF No. 22 ¶ 25; ECF No. 23 ¶ 25.) During the April 17, 2013, office visit, the records indicate that Mr. Yuzwa stated that the "pains are 'sort of achy' & they tend to occur 'a couple of times a week.'" (ECF No. 22 ¶ 26; ECF No. 23 ¶ 26.) According to his records,

---

[3] It is undisputed that gastroenteritis is generally defined as "inflammation of the stomach and intestines, typically resulting from bacterial toxins or viral infection and causing vomiting and diarrhea." (ECF No. 23-2 ¶ 16; ECF No. 25 ¶ 16.) It is commonly referred to as the stomach flu. (ECF No. 23-2 ¶ 16; ECF No. 25 ¶ 16.)

[4] It is undisputed that Irritable Bowl Syndrome is generally defined as "a widespread condition involving recurrent abdominal pain and diarrhea or constipation, often associated with stress, depression, anxiety, or previous intestinal infection." (ECF No. 23-2 ¶ 17; ECF No. 25 ¶ 17.)

Mr. Yuzwa also admitted to "occasionally feeling nauseated." (ECF No. 22 ¶ 27; ECF No. 23 ¶ 27.) The records indicate that Plaintiff accompanied Mr. Yuzwa to his appointment. (ECF No. 22 ¶ 28; ECF No. 23 ¶ 28.) The records indicate that Plaintiff stated, "He has told me that he has trouble moving his bowels, then he will have diarrhea at other times," although Mr. Yuzwa apparently stated that his bowels "were normal." (ECF No. 22 ¶ 29; ECF No. 23 ¶ 29.)

The records also show that on May 23, 2014, Mr. Yuzwa complained of a "stomachache and nausea," reported "diffuse abdominal pain," and was diagnosed with gastroenteritis. (ECF No. 22 ¶ 30; ECF No. 23 ¶ 30.) The records indicate that Plaintiff accompanied Mr. Yuzwa to his appointment. (ECF No. 22 ¶ 31; ECF No. 23 ¶ 31.)

According to the records, on November 22, 2014, Mr. Yuzwa complained of abdominal pain and was diagnosed with irritable bowel syndrome ("IBS"). (ECF No. 22 ¶ 32; ECF No. 23 ¶ 32.) His records indicate that he was "diagnosed with IBS in the past and took probiotics." (ECF No. 22 ¶ 33; ECF No. 23 ¶ 33.) Again, the records indicate that Plaintiff accompanied Mr. Yuzwa to his appointment. (ECF No. 22 ¶ 34; ECF No. 23 ¶ 34.)

Then, on February 17, 2015, Mr. Yuzwa, while accompanied by Plaintiff, sought treatment and stated that his "stomach hurts as well as he feels nauseated." (ECF No. 22 ¶ 35; ECF No. 23 ¶ 35.)

On February 24, 2015, Mr. Yuzwa once again sought treatment for a "stomach ache" and was diagnosed with gastroenteritis. (ECF No. 22 ¶ 36; ECF No. 23 ¶ 36.) Mr. Yuzwa was accompanied by Plaintiff, his mother. (ECF No. 22 ¶ 37; ECF No. 23 ¶ 37.)

On March 31, 2015, Mr. Yuzwa sought treatment, while accompanied by Plaintiff, and was diagnosed with gastroenteritis for the third time in less than a year. (ECF No. 22 ¶ 38; ECF No. 23 ¶ 38.)

The records also indicate that, on April 7, 2015, Mr. Yuzwa again sought treatment while accompanied by Plaintiff and complained that "his joints have been hurting him for years and he thinks he has arthritis." (ECF No. 22 ¶ 39; ECF No. 23 ¶ 39.)

From March 31, 2015, until the date of his death on August 2, 2017, Mr. Yuzwa did not visit Laurel Pediatric Associates for any stomach conditions. (ECF No. 23-2 ¶ 22; ECF No. 25 ¶ 22.)

### b. Marijuana-Dependency Records

In addition, during the relevant time period, Defendant's investigation revealed that Mr. Yuzwa participated in a drug treatment program at two facilities: Gateway Rehab Addiction Recovery & Self Renewal ("Gateway") and Somerset Hospital Twin Lakes Center ("Twin Lakes").[5] (ECF No. 23-2 ¶ 27; ECF No. 25 ¶ 27.) He participated in this program as part of mandatory treatment ordered by the Cambria County Juvenile Court.[6] (ECF No. 23-2 ¶ 30; ECF No. 25 ¶ 30.)

---

[5] The parties dispute whether the drug treatment should be characterized as one continuous period of treatment or separate, periodic treatments. (*See* ECF No. 23-2 ¶ 27 & n.2; ECF No. 25 ¶ 27.)

[6] Defendant denies this statement (*see* ECF No. 25 ¶ 30), but does not actually set forth the basis for its denial of Plaintiff's statement that "the drug treatment program that Luke Yuzwa participated in was imposed on him as part of a Juvenile Delinquency finding by the Cambria County Juvenile Court." (ECF No. 23-2 ¶ 30.) Instead, Defendant only specifically responds to the second part of Plaintiff's statement, in which Plaintiff says that Mr. Yuzwa did not participate in the drug-treatment due to a medical diagnosis by a doctor. Therefore, pursuant to the Western District of Pennsylvania's Local Civil Rule of Court 56 and Federal Rule of Civil Procedure 56, the Court will deem the first part of Plaintiff's statement admitted.

Mr. Yuzwa participated in the YES 3.5 inpatient program at Gateway from May 31, 2015, through July 10, 2015, at which time he received a regular discharge and was transferred to the YES 3.1 program for outpatient treatment from July 10, 2015, through August 19, 2015. (ECF No. 23-2 ¶ 28; ECF No. 25 ¶ 28.)

Defendant obtained records from Gateway. (ECF No. 22 ¶ 40; ECF No. 23 ¶ 40.) The records provided by Gateway indicate:

Luke Yuzwa was evaluated for services on May 5, 2015. He was admitted to Gateway Rehabilitation Center's YES 3.5 Program on May 21, 2015 through July 10, 2015. He was transferred to the YES 3.1 program on July 10, 2015 through August 19, 2015. Luke received a regular discharge on August 19, 2015.

(ECF No. 22 ¶ 41; ECF No. 23 ¶ 41.) On July 2, 2015, Plaintiff emailed Gateway that "I believe Luke will need to continue with treatment . . . ." (ECF No. 22 ¶ 42; ECF No. 23 ¶ 42.)

At Twin Lakes, Mr. Yuzwa attended five[7] outpatient counseling sessions between August 26, 2015, and November 25, 2015. (ECF No. 23-2 ¶ 29; ECF No. 25 ¶ 29.) Defendant obtained records from Twin Lakes. (ECF No. 22 ¶ 43; ECF No. 23 ¶ 43.) The records state:

The patient (Luke Yuzwa) was admitted into Twin Lakes Center on August 26, 2015. He attended his intake session and five individual sessions. Patient was discharged unsuccessfully on November 25, 2015, for attendance concerns.

(ECF No. 22 ¶ 44; ECF No. 23 ¶ 44.) The records describe Mr. Yuzwa's prognosis as "Poor." (ECF No. 22 ¶ 45; ECF No. 23 ¶ 45.) The records obtained from Twin Lakes further indicate that Mr. Yuzwa "is a juvenile diagnosed as having marijuana dependency issues." (ECF No. 22 ¶ 46; ECF No. 23 ¶ 46.) But from November 25, 2015—when Mr. Yuzwa was discharged from Twin Lakes—

---

[7] Defendant contends that Mr. Yuzwa attended six sessions. (ECF No. 40 ¶ 2.)

until his death on August 2, 2017, Mr. Yuzwa did not undergo any additional or periodic medical treatment related to marijuana dependency. (ECF No. 23-2 ¶ 31; ECF No. 25 ¶ 31.)

### 3. Defendant's Rescission of the Policies

On October 4, 2017, Defendant denied Plaintiff's claims for benefits under the Policies and, in doing so, rescinded the Policies. (ECF No. 22 ¶ 47; ECF No. 23 ¶ 47.) In its rescission letter, Defendant stated, in part:

> During the application process, including the Quality Assurance Call made on 02/01/2016, you answered all questions with a NO. You advised us that Luke did not have any chronic illness or condition which required periodic medical care and that he was in good health. While investigating this claim, we received the following information concerning Luke's health history:
>
> Gateway Rehabilitation Center 5/21/2015-7/10/2015: Luke was admitted for substance abuse.
>
> Twin Lakes Center/Somerset Hospital 8/26/2015-11/25/2015: Luke was admitted for marijuana use/abuse. lymphadenopathy and gastroenteritis. [8]
>
> Luke had chronic conditions which required periodic medical care prior to the applications for insurance. Based on this information, you should have responded YES to Question 4(a) on the applications for insurance. If the Company had been aware of Luke Yuzwa's medical history at the time of application, we would have been unable to approve him for coverage.

(ECF No. 35 ¶¶ 2-3; ECF No 40 ¶¶ 2-3; ECF No. 35-2.)

By letter dated January 16, 2018, Plaintiff attempted to appeal Defendant's decision to deny her claims and rescind the Policies. (ECF No. 35 ¶ 7; ECF No. 40 ¶ 7; ECF No. 22-10 at 1.) In response to Plaintiff's appeal letter, Defendant sent a letter dated February 27, 2018, reaffirming its denial of coverage based on Mr. Yuzwa's "significant undisclosed health history." (ECF No.

---

[8] It is undisputed that Twin Lakes never treated Mr. Yuzwa for either lymphadenopathy or gastroenteritis. (ECF No. 35 ¶ 2 n.1; ECF No. 40 ¶ 2.)

9

35 ¶ 10; ECF No. 40 ¶ 10.)

According to Nicholas Danner, Defendant's Vice President of Underwriting and New Business, Defendant considers substance abuse to be a medical condition that requires periodic medical care. (ECF No. 35 ¶ 64; ECF No. 40 ¶ 64.) Defendant uses the Swiss Re Cannabis Adult Ratings Guidelines (the "Guidelines") to evaluate marijuana use. (ECF No. 35 ¶ 69; ECF No. 40 ¶¶ 64, 69.) The Guidelines break down the proposed insured's marijuana use into several categories. (ECF No. 35 ¶ 70; ECF No. 40 ¶ 70.) According to Mr. Danner, using the Guidelines, a proposed insured who was eighteen years or younger and used marijuana would be assigned a rating of "P," which means "Postpone," and therefore would not be issued a policy until they turned nineteen years old. (ECF No. 35 ¶ 74; ECF No. 40 ¶ 74.) The insurer could then issue a policy if the proposed insured was using marijuana but had a stable environment. (ECF No. 35 ¶ 74; ECF No. 40 ¶ 74.) Mr. Danner also testified that "as a cause of more mortality risk, the incomplete drug rehabilitation was the primary issue or concern for underwriting." (ECF No. 35 ¶ 79; ECF No. 40 ¶ 79.)

Mr. Danner also testified that because Mr. Yuzwa's diagnosed "lymphedema and gastroenteritis appear to have been ac[]ute," they "probably [were] not the basis for rescission." (ECF No. 35 ¶ 81; ECF No. 35-6 at 22:4-5.)

## B. Procedural History

On April 26, 2018, Plaintiff filed her Complaint (ECF No. 1), bringing claims for breach of contract and bad faith against Defendant. On November 15, 2018, Defendant filed a Motion for Partial Summary Judgment (ECF No 20), seeking summary judgment on Plaintiff's bad-faith

10

claim. The parties' briefing on Defendant's Motion (*see* ECF Nos. 21, 24, 26, 36, 41) concluded on June 18, 2019.

## IV. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*,

11

260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue" (internal quotation marks omitted)).

## V.   Discussion

### A.   Relevant Law

Pennsylvania's bad-faith statute provides that:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.[9]

---

[9] As this Court has previously noted, "Section 8371 encompasses a broad range of insurer conduct." *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 524 (W.D. Pa. 2012) (Gibson, J.). Although Section 8371 does not define the term "bad faith," "courts have subsequently determined that a variety of carrier actions can constitute bad faith, including 'a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured.'" *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012) (quoting *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n. 9 (3d Cir. 1999)). "Bad faith also occurs when an insurance company makes an 'inadequate investigation or fails to perform adequate legal research concerning a coverage issue.'" *Smith*, 904 F. Supp. 2d at 524 (quoting *Corch Constr. Co. v. Assurance Co. of Am.*, 64 Pa. D. & C.4th 496, 516 (Cnty. Ct. 2003)).

To succeed on a statutory bad faith claim, "the insured must prove: (1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citing *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000)); *U.S. Fire Ins. Co. v. Kelman Bottles*, 538 F. App'x 175, 182 (3d Cir. 2013); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994); *Rowe v. Nationwide Ins. Co.*, 6 F. Supp. 3d 621, 630 (W.D. Pa. 2014) (Gibson, J.); *Hayden v. Westfield Ins. Co.*, No. CIV.A. 12-0390, 2013 WL 5781121, at *10 (W.D. Pa. Oct. 25, 2013) (Hornak, J.); *Lewis v. Atl. States Ins. Co.*, No. 2:08-CV-01040-LPL, 2014 WL 12595309, at *7 (W.D. Pa. Sept. 26, 2014) (Lenihan, M.J.)

As Judge Hornak stated, "[t]he first prong of the *Babayan* test is objective, 'so if a reasonable basis exists for an insurer's decision, even if the insurer did not rely on that reason, there cannot' as a matter of law be bad faith." *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 669 (W.D. Pa. 2012) (quoting *Wedemeyer v. U.S. Life Ins. Co. in City of N.Y.*, No. 05–6263, 2007 WL 710290, at *9 (E.D. Pa. Mar. 6, 2007)); *see Rowe*, 6 F. Supp. 3d at 630 (explaining that, "[t]o defeat a claim of bad faith, an insurer must only demonstrate that it had a reasonable basis for its decision" (citing *Leach v. Nw. Mut. Ins. Co.*, No. 01–cv–2364, 2005 WL 3533116, at *11 (W.D. Pa. Dec. 22, 2005))); *Hayden*, 2013 WL 5781121, at *10 (stating that "an insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions" (quoting *Arnica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011))).

13

The second prong requires demonstrating that the "insurer knowingly or recklessly disregarded its lack of a reasonable basis for denying a claim."[10] *Rancosky v. Wash. Nat'l Ins. Co.*, 130 A.3d 79, 93 (Pa. Super. Ct. 2015) (citing *Greene v. United Servs. Auto. Ass'n*, 936 A.2d 1178, 1191 (Pa. Super. Ct. 2007)). "Indeed, 'the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits.'" *Hayden*, 2013 WL 5781121, at *10 (quoting *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004)).

"The insured is required to meet its burden of proving 'bad faith' by clear and convincing evidence." *Babayan*, 430 F.3d at 137 (citing *Terletsky*, 649 A.2d at 688); *Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, No. CIV.A. 13-284, 2015 WL 539550, at *9 (E.D. Pa. Feb. 10, 2015). To satisfy this standard, "the plaintiff [must] show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Hayden*, 2013 WL 5781121, at *11 (internal quotation marks omitted) (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004)). Accordingly, "the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *Hayden*, 2013 WL 5781121, at *11 (internal quotation marks omitted) (quoting *Pilosi*, 393 F.3d at 367); *Swan Caterers, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 12-CV-00024, 2012 WL 5508371, at *6 (E.D. Pa. Nov. 13, 2012).

---

[10] As courts in the Third Circuit have repeatedly held, "mere negligence or bad judgment is not bad faith." *Babayan*, 430 F.3d at 137 (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)); *Smith*, 904 F. Supp. 2d at 524 (same); *see Lewis*, 2014 WL 12595309, at *7 ("Merely negligent conduct, however harmful to the interests of the insured, is recognized by Pennsylvania courts to be categorically below the threshold required for a showing of bad faith." (internal citations omitted)); *Klinger v. State Farm Mut. Auto. Ins. Co.*, 895 F. Supp. 709, 714 (M.D. Pa. 1995) ("[N]egligence, even gross negligence, cannot support a finding of bad faith.").

## B. Analysis

Here, Plaintiff asserts that Defendant acted in bad faith due to (1) its refusal to pay Plaintiff the insurance proceeds and its rescission of the Policies, (2) its lack of investigation into the facts regarding Mr. Yuzwa's alleged medical conditions, and (3) its failure to comply with a Pennsylvania statute and regulation.

### 1. Rescission of the Policies

"[U]nder Pennsylvania law, an insurer may rescind an insurance policy if (1) the insurance application contained a misrepresentation; (2) the misrepresentation was material to the risk being insured; and (3) the insured knew that the representation was false when made or the insured made the representation in bad faith." *Adams v. Reassure Am. Life Ins. Co.*, No. Civ. 3CV010319, 2003 WL 23018922, at *8 (M.D. Pa. Mar. 31, 2003) (citing *Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 356 (E.D. Pa. 1997)). "In order to defeat a bad faith claim, [the defendant] must show only that it *reasonably believed* that the three-part test was met, not that each element was actually met." *Jung*, 949 F. Supp. at 356. "In order for the court to grant summary judgment for the insurer, however, [the defendant] must show that reasonable minds could not differ on the question of the reasonableness of [the defendant's] belief that rescission was appropriate." *Id.* "If a jury could find by clear and convincing evidence that [the defendant's] belief that it could rescind the policy was unreasonable, summary judgment is not appropriate." *Id.*

Here, Defendant claims that it reasonably believed it had grounds to rescind the Policies based on Plaintiff's failure to disclose Mr. Yuzwa's gastroenteritis and IBS, lymphadenopathy, and marijuana dependency in response to Question 4(a). The Court concludes that a reasonable jury could determine that Defendant unreasonably believed it had grounds to rescind the Policies.

15

### a. A reasonable jury could find that Defendant lacked a reasonable basis for rescinding the Policies.

The first prong of the bad-faith test requires the insured to prove that the insurer did not have a reasonable basis for denying benefits under the policy. The Court concludes that a reasonable jury could find that this prong is met in this case because a jury could determine that Defendant unreasonably believed it could rescind the Policies based on Plaintiff's alleged misrepresentations about Mr. Yuzwa's gastrointestinal conditions, lymphadenopathy, and marijuana dependency.

> #### i. A reasonable jury could conclude that Defendant unreasonably believed it could rescind the Policies based on Mr. Yuzwa's gastrointestinal conditions and lymphadenopathy.

With regard to Mr. Yuzwa's IBS and gastroenteritis diagnoses, a jury could find it unreasonable for Defendant to believe that Plaintiff made a misrepresentation when she responded in the negative to Question 4(a). The undisputed facts establish that Mr. Yuzwa was diagnosed three times with gastroenteritis and once with IBS between April 2013 and April 2015. He also complained to his physician on various occasions about abdominal pain, nausea, and vomiting. The physician advised Mr. Yuzwa to take over-the-counter medications and recommended changes to his diet, but did not prescribe any medication, recommend follow-up visits, or schedule testing. And Plaintiff pointed to evidence that the gastroenteritis—which the parties agree is a virus that is commonly referred to as the "stomach flu"—was acute and that Mr. Danner believes the gastroenteritis was "probably not the basis for rescission." As for Mr. Yuzwa's IBS diagnosis, Mr. Yuzwa's records only mention IBS once and state that his abdominal discomfort "could be related to Irritable Bowel Syndrome." (ECF No. 22-8 at 23.) Following that

16

diagnosis, there is no evidence that Plaintiff sought out additional medical care related to IBS. Making all inferences in Plaintiff's favor, a reasonable jury could find that Defendant unreasonably believed that Plaintiff misrepresented Mr. Yuzwa's health conditions when she failed to mention a seemingly minor virus (gastroenteritis) and a one-time diagnosis (IBS) in response to a question about "condition[s] which require[] periodic medical care."

As for the lymphadenopathy, Defendant admits that there is only one reference to lymphadenopathy in Mr. Yuzwa's medical records. (ECF No 41 at 9; ECF No. 22-8 at 29.) And Defendant does not point to any evidence of continuing symptoms of this illness. Defendant argues that the fact that Mr. Yuzwa missed five days of school as a result of this illness made it reasonable for Defendant to conclude that Mr. Yuzwa's condition was a "chronic illness" that Plaintiff should have reported on the applications. But a jury could find that it was unreasonable for Defendant to conclude that one five-day period of illness was a "chronic" illness that Plaintiff should have disclosed to Defendant.

> **ii. A reasonable jury could also conclude that Defendant unreasonably believed it could rescind the Policies based on Mr. Yuzwa's marijuana dependency.**

A reasonable jury could also find that Defendant unreasonably believed it could rescind the Policies based on Mr. Yuzwa's marijuana dependency. Specifically, a reasonable jury could conclude that Defendant lacked a reasonable basis to believe that Plaintiff knew the purported misrepresentation was false when made.[11]

---

[11] The Court believes that no reasonable jury could determine that Defendant was unreasonable in believing that the first two elements of the rescission test—that Plaintiff made a misrepresentation and that it was material—were met with regard to the marijuana dependency. However, the Court need not analyze these elements, as the third element of the rescission test—whether Plaintiff knew the purported misrepresentation was false—is determinative at this stage.

Defendant adduced evidence that Plaintiff communicated with personnel at Gateway about Mr. Yuzwa's continued drug-dependency treatment. (*See* ECF No. 22-10 at 11.) Defendant argues that it therefore reasonably believed Plaintiff knew about Mr. Yuzwa's treatment when she failed to disclose it on the applications.

However, Plaintiff points to evidence that she explained to Defendant that she believed the treatment was a one-time occurrence and was therefore not "periodic" under the application language. (*See id.* at 1.) Furthermore, the fact that Plaintiff knew of Mr. Yuzwa's treatment does not, under the facts of this case, necessarily suggest that she knew her representations on the application were false. Therefore, a reasonable jury could conclude that Defendant did not reasonably believe that Plaintiff knew the alleged misrepresentation about drug dependency was false.

### b. A reasonable jury could find that Defendant knew of or recklessly disregarded its lack of reasonable basis.

The second prong of the bad-faith test requires that Plaintiff demonstrate that the "insurer knowingly or recklessly disregarded its lack of a reasonable basis for denying a claim." *Rancosky*, 130 A.3d at 93. Although it is a close call, the Court determines that a reasonable jury could find that Defendant knew of or recklessly disregarded its lack of reasonable basis here.

With regard to the gastrointestinal conditions and lymphadenopathy, a reasonable jury could find that these conditions were so clearly not "chronic illness[es] or condition[s] which require[] periodic medical care" that Defendant knew of or recklessly disregard its lack of reasonable basis for rescinding the Policies on these grounds, particularly when considering Mr. Danner's testimony that the lymphadenopathy and gastroenteritis "appear to have been ac[]ute"

18

and "probably [were] not the basis for rescission." (*See* ECF No. 35-6 at 22:4-5.)

As for the marijuana dependency, Plaintiff sent a letter to Defendant following Defendant's rescission of the Policies in which she attempted to appeal Defendant's decision. She explained that she had thought she answered the application questions accurately because she did not believe that Mr. Yuzwa's drug treatment involved "periodic" medical care. (ECF No. 22-10 at 1.) Considering this letter and the fact that Defendant has not pointed to any evidence that Plaintiff knew her statements were false, as well as the fact that Defendant chose not to examine Plaintiff under oath prior to rescinding the Policies in order to gather more information on whether Plaintiff knew she had made false representations, a reasonable jury could find that Defendant recklessly disregarded its lack of reasonable basis for rescinding the Policies.

The Court will therefore deny Defendant's Motion for Partial Summary Judgment to the extent Plaintiff's bad-faith claim is based on the unreasonable rescission of the Policies.

### 2. Lack of Investigation

Plaintiff also bases her bad-faith claim on Defendant's purported inadequate investigation into the facts surrounding her claim. "Courts have extended the concept of 'bad faith' beyond an insure[r]'s denial of a claim in several limited areas," *Babayan*, 430 F.3d at 137, including to unreasonably inadequate investigations. *See Kelly v. Progressive Advance Ins. Co.*, 159 F. Supp. 3d 562, 564 (E.D. Pa. Feb. 4, 2016) (citing *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999)); *Kohn v. Unumprovident Corp.*, Civil Action No. 2:04-cv-4929, 2008 WL 4787556, at *5 (E.D. Pa. Oct. 31, 2008); *Hamm*, 908 F. Supp. 2d at 672. But "Pennsylvania law provides that it is not bad faith to conduct a thorough investigation into a questionable claim." *Babayan*, 430 F.3d at 138. "The insurance company 'need not show that the process used to reach

19

its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion.'" *Hamm*, 908 F. Supp. 2d at 670 (quoting *Mann v. UNUM Life Ins. Co. of Am.*, No. 02-1346, 2003 WL 22917545, at *7 (E.D. Pa. Nov. 25, 2003)). "Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Id.* (internal quotation marks omitted) (quoting *Mann*, 2003 WL 22917545, at *7).

Plaintiff argues that Defendant failed to reasonably investigate Mr. Yuzwa's alleged medical conditions before rescinding coverage. Plaintiff cites the following actions and inactions of Defendant that purportedly evince Defendant's bad-faith failure to investigate: (1) Natisha Rose, Defendant's claims analyst who was assigned to Plaintiff's claims, never ascertained how Mr. Yuzwa received his substance-abuse diagnosis; (2) Defendant failed to contact Mr. Yuzwa's doctors to get more information about his diagnoses; (3) Defendant never sent Mr. Yuzwa's medical files to its medical officer to review; (4) Defendant never asked Plaintiff how she interpreted Question 4(a), either informally or through an Examination Under Oath, even after Plaintiff sent Defendant a letter in which she explained why she did not believe Mr. Yuzwa suffered from any conditions that required periodic medical care; (5) Defendant never inquired into the reasons for Mr. Yuzwa's court-ordered drug treatment; and (6) Defendant failed to analyze the Guidelines and apply them to Mr. Yuzwa's case, including by failing to gain information on the frequency with which Mr. Yuzwa used marijuana. (*See, e.g.*, ECF No. 36 at 22.)

In response, Defendant claims that it reasonably investigated Plaintiff's claims by obtaining Mr. Yuzwa's medical records. Further, Defendant contends that "Plaintiff has

presented absolutely no authority supporting an argument that [Defendant] was required to do any of these things or even that doing these things would have led to a different conclusion." (ECF No. 41 at 17.)

While the Court agrees that not all the disputed facts identified by Plaintiff suggest bad faith, there is enough evidence from which a jury could reasonably conclude that Defendant failed to conduct a reasonable investigation into the factual circumstances underlying Plaintiff's insurance claims. Therefore, the Court will deny Defendant's Motion for Partial Summary Judgment to the extent Plaintiff's bad-faith claim is based on an unreasonable investigation.

### 3. Failure to Comply with Pennsylvania Statute and Regulation

Plaintiff also argues that Defendant acted in bad faith because the rescission letter that Defendant sent to Plaintiff does not satisfy the requirements of 40 Pa. Stat. § 1171.5(a)(10)(xiv) (explaining that "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement" is an unfair practice) and 31 Pa. Code § 146.7(a)(1) ("An insurer may not deny a claim on the grounds of a specific policy provision, condition or exclusion unless reference to the provision, condition or exclusion is included in the denial."). (ECF No. 36 at 4.) Plaintiff explains that courts may look to the language of these provisions as a guide for determining whether an insurer's conduct constitutes bad faith under Pennsylvania's bad-faith statute. (ECF No. 36 at 4 (citing *Emp'rs Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 493 (W.D. Pa. 2007)).)

Using the language of Section 1171.5(a)(10) as a guide, Plaintiff has failed to identify sufficient facts to support a bad-faith claim based on a failure to provide a reasonable explanation. Section 1171.5(a)(10) identifies acts that constitute unfair practices "if committed or performed

21

with such frequency as to indicate a business practice." 40 Pa. Stat. § 1171.5(a)(10). But here, Plaintiff has not even alleged that Defendant *frequently* failed to provide a reasonable explanation of the basis in the Policies for rescission. Moreover, Plaintiff has not identified evidence that Defendant failed to provide a reasonable explanation for rescinding the Policies. While Plaintiff argues that Defendant should have stated in the rescission letter that the alleged misrepresentations were material, the Court finds that Defendant clearly so stated. (*See* ECF No. 35-2 ("If the Company had been aware of Luke Yuzwa's medical history at the time of the application, we would have been unable to approve him for coverage.").) And Plaintiff has pointed to no authority to support the proposition that Defendant had to use the exact language asserted by Plaintiff under Section 1171.5(a)(10)(xiv).

In terms of Section 146.7(a)(1), the Court understands Plaintiff to be arguing that Defendant should have quoted the policy provision upon which it based the rescission in the rescission letter. But Defendant does not appear to have based the rescission on the policy language. Instead, as stated in the rescission letter, Defendant based the rescission on Pennsylvania law regarding rescission for material misrepresentations. (*See* ECF No. 35-2 at 1 ("[T]he law provides that, for a period of two years from the date of issue, an insurance company may deny a claim on an insurance policy when the application for insurance contains incorrect or incomplete statements, which, if known, would have caused the company not to have issued the policy.").)

Furthermore, assuming Section 1171.5(a)(10)(xiv) and Section 146.7(a)(1) were violated in

22

this case, "a violation of the UIPA[12] does not constitute *per se* bad faith under section 8371." *Emp'rs Mut. Cas.*, 476 F. Supp. 2d at 493. Here, the rescission letter's language is not sufficient for a reasonable jury to find statutory bad faith, as the letter does not suggest unreasonable behavior on the part of Defendant and there is no evidence that Defendant knew of or recklessly disregarded any unreasonable behavior. At most, any violations of these provisions suggest that Defendant may have been negligent in the preparation of the rescission letter.

The Court will thus grant Defendant's Motion for Partial Summary Judgment to the extent Plaintiff's bad-faith claim is based on Defendant's purported violation of a Section 1175(a)(10)(xiv) and Section 146.7(a)(1).

#### 4. Plaintiff's Other Bad-Faith Arguments

Finally, Plaintiff argues that Defendant's constantly changing bases for rescinding the Policies, as well as Defendant's failure to reference gastroenteritis and lymphadenopathy in its affirmative defenses, are evidence of Defendant's bad faith. The Court disagrees. There is no evidence that Defendant has constantly changed its basis for rescission—instead, Defendant has asserted since it sent the rescission letter that the rescission was based on misrepresentations about Mr. Yuzwa's medical history in the applications. And the fact that the specific medical conditions that Defendant claims Plaintiff omitted have changed as the parties engaged in discovery, without more, is simply not evidence of bad faith.

### VI. Conclusion

In light of the foregoing, Defendant's Motion for Partial Summary Judgment (ECF No. 20)

---

[12] The Unfair Insurance Practices Act ("UIPA") includes Section 1171.5, and Section 146.7 is a regulation that was enacted under the UIPA.

23

is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent Plaintiff's bad-faith claim is based on Defendant's purported failure to comply with a Pennsylvania statute and regulation, and the Motion is **DENIED** to the extent Plaintiff's bad-faith claim is based on Defendant's rescission of the policy and its failure to reasonably investigate Plaintiff's claims. A corresponding order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAMMY HORVATH,** | ) | **Case No. 3:18-cv-84** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GLOBE LIFE AND ACCIDENT** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### ORDER

NOW, this **26th** day of August, 2019, upon consideration of Defendant's Motion for

Partial Summary Judgment (ECF No. 20), and for the reasons set forth in the Memorandum

Opinion accompanying this Order, it is **HEREBY ORDERED** that Defendant's Motion is

**GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent Plaintiff's

bad-faith claim is based on Defendant's purported failure to comply with a Pennsylvania statute

and regulation, and the Motion is **DENIED** to the extent Plaintiff's bad-faith claim is based on

Defendant's rescission of the policy and its failure to reasonably investigate Plaintiff's claims.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**